**Alfredo Garcia RUIZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 04–81–00105–CR.**

Court of Appeals of Texas, San Antonio.

Dec. 22, 1982.

Discretionary Review Refused March 16, 1983.

Larry D. Brockman, Universal City, for appellant.

Bill White, Dist. Atty., Alan E. Battaglia, Asst. Dist. Atty., San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and CLARK, JJ.

## OPINION

CLARK, Justice.

This is an appeal from a conviction of the felony offense of unauthorized use of a vehicle. Appellant, a repeater, was assessed twelve (12) years' confinement in the Texas Department of Corrections and a fine of five thousand dollars ($5,000.00). The sufficiency of the evidence is not challenged and appellant alleges two grounds of error.

We will deal first with appellant's second ground of error. Appellant contends that the trial court committed reversible error in denying appellant's motion to suppress evidence of his arrest, which he asserts was a pretext arrest. During the hearing on the motion to suppress, officer Alvin Nelson testified that on July 26, 1978 he was a police officer on the night shift in Converse, Texas. While patrolling his area at 11:30 p.m., officer Nelson observed a closed-in van traveling between 10 and 15 miles per hour in a residential area of Converse. There was no other traffic in the area. Nelson became suspicious when he saw the van begin to slowly circle an area of new houses. Nelson followed the van for 15 minutes until it turned onto another road where he clocked the van traveling 11 miles per hour over the posted 20 miles-per-hour speed limit. The officer then turned on his red emergency lights and stopped the van. He approached the van and informed the occupants, later identified as the appellant and a Ms. Hayden, of the traffic violation and asked the appellant, who was in the driver's seat, for identification. He received a temporary driver's license from the appellant and proceeded to run a check on the license, learning thereby that there was an active warrant for appellant's arrest on a traffic charge in San Antonio. When Nelson returned to the van to inform the appellant, Ms. Hayden and the appellant had exchanged places. Upon being informed by Nelson that he was under arrest, appellant jumped out of the passenger side of the van and ran off into the neighborhood. After running a check on the van, officer Nelson learned that the van had been reported stolen in San Antonio.

Appellant alleges that officer Nelson's stop of the van for speeding was a pretext arrest. It is well settled that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio,*

392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1967); *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). It is also well established that a brief detention of suspicious individuals in order to maintain the status quo momentarily, while obtaining more information, may be reasonable in light of the facts known to the officer at the time. *Adams, supra; Wood v. State,* 515 S.W.2d 300, 306 (Tex.Cr. App.1974); *Borner v. State,* 521 S.W.2d 852, 855 (Tex.Cr.App.1975); *Greer v. State,* 544 S.W.2d 125, 127 (Tex.Cr.App.1976); *Dillard v. State,* 550 S.W.2d 45, 50 (Tex.Cr.App. 1977).

In this case, officer Nelson stopped the appellant for speeding. In *Borner, supra,* the court held that the officers there had a right to arrest the defendant for driving 78 miles an hour on the highway under Tex. Rev.Civ.Stat.Ann. art. 6701d, § 153 (Vernon 1977), and under § 148 of that article to take him into custody and to a magistrate. Officer Nelson's stop of appellant for speeding, and his attempt to arrest appellant immediately thereafter upon learning of the existing warrant for appellant's arrest, was therefore valid and not a pretext arrest.

The case at bar closely parallels the facts in *Greer, Borner, Wood,* and particularly *Christopher v. State,* 639 S.W.2d 932 (Tex. Cr.App.1982). In *Greer,* the defendant was seen driving the wrong way on a one-way street at 1:30 a.m. by a police officer who broadcast an alarm and an incomplete description of the vehicle and driver. The defendant was traveling four to seven miles an hour and was driving in a square pattern around certain downtown city blocks when he was observed shortly thereafter by another officer who had heard the broadcast. The officer made a brief investigative stop, although he himself observed no traffic violations. The *Greer* court held that the stop was valid. In *Borner,* the defendant was

traveling 78 miles an hour on the highway, before the adoption of the 55 miles-per-hour limit. After stopping the defendant, the officers found marihuana in the car. The court held that the traffic stop and arrest were valid. In *Wood,* the defendant was a passenger in a car that ran a stop sign at 3:00 a.m. less than a mile from a reported attempted burglary. Upon making the traffic stop, the officer, thinking the appellant appeared to be drunk, asked him to step out of the car and frisked him. The search produced the gun used and money stolen in the earlier reported burglary. The court held the traffic stop and search valid. The case that comes closest to the facts of the case at bar is *Christopher v. State, supra.* In *Christopher,* the defendant was observed driving a pickup truck with a camper through Dripping Springs, Texas. A law enforcement officer became suspicious of the vehicle and followed it. While following the defendant, the officer determined that the defendant was exceeding the speed limit. The officer continued to follow the defendant in order to determine whether he was speeding deliberately. After calling for assistance the officer stopped the defendant, having concluded that he was speeding deliberately. The court in *Christopher* held that the initial stop of the defendant's vehicle was authorized because a traffic violation was committed within the presence or view of the officer.[1]

In *Terry,* the court also held that to justify a particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. The court also stated that when the police officer's conduct is evaluated it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution

---

1. For stops and arrests made after traffic violations *see Hampton v. State,* 511 S.W.2d 1 (Tex. Cr.App.1974); *Wilson v. State,* 511 S.W.2d 531 (Tex.Cr.App.1974); *Tores v. State,* 518 S.W.2d 378 (Tex.Cr.App.1975); *Beck v. State,* 547 S.W.2d 266 (Tex.Cr.App.1976); *Thomas v.* *State,* 572 S.W.2d 507 (Tex.Cr.App.1976); *Moulden v. State,* 576 S.W.2d 817 (Tex.Cr.App. 1978); *Howard v. State,* 599 S.W.2d 597 (Tex. Cr.App.1979); *McCallan v. State,* 608 S.W.2d 222 (Tex.Cr.App.1980).

in the belief that the action taken was appropriate? *Id.* 392 U.S. at 22, 88 S.Ct. at 1880.

■ In the case before us, officer Nelson observed a strange van, traveling late at night, at a slow rate of speed, in a residential area of Converse. He became suspicious when he saw the van twice circle a new housing area. His familiarity with the automobiles in the area and his knowledge of the use of vans in recent burglaries in that particular area gave him reason to follow the appellant. When the appellant violated the speed limit, officer Nelson had probable cause to stop and arrest the appellant for the traffic violation. In light of these facts and the Court of Criminal Appeals' holdings in *Greer, Borner, Wood,* and *Christopher,* we hold that the stop of the appellant by officer Nelson was not a pretext arrest and the trial court's overruling of appellant's motion to suppress was not reversible error.[2] Appellant's second ground of error is denied.

In his first ground of error appellant contends the trial court erred in admitting evidence of an extraneous offense committed by the appellant, such evidence being inadmissible to show identity or for purposes of impeachment. Appellant did not testify, but did call Patricia Wood Hayden as the only defense witness. Ms. Hayden testified that appellant was not in the stolen van on the night of July 26, 1978, when they were stopped in Converse, Texas. She claimed that her boyfriend, Tommy Ortega, was the driver of the van when it was stopped and that the appellant was not present. On cross-examination by the State, Hayden testified that she and the appellant had never driven in a van together other than a van loaned to her by Albert Wechsler. Hayden also claimed not to recall her involvement in a high speed chase in a stolen van with the appellant and a man named Quiroz on December 21, 1978. The State proceeded to call police officer Bill White as a rebuttal witness. White testified, over appellant's objection, that he had pursued a stolen van in which Hayden and appellant were riding and that the suspects had shot at him.

Appellant asserts that White's testimony tended to show the commission of extraneous offenses by the appellant, namely burglary, evading arrest and attempted murder.

In *Chambers v. State,* 601 S.W.2d 360, 362 (Tex.Cr.App.1980) the court held that, "Evidence of unrelated offenses committed by a defendant is generally not admissible, since a defendant may not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972). There is an exception to this general rule where evidence of the commission of other offenses by the accused is introduced to establish the identity of the person or crime, intent, motive, system, or as part of res gestae. *Albrecht, supra.*" Appellant contends that the State was not attempting to show motive, identity, refutation of alibi, or intent, but was attempting to impeach the testimony of defense witness Hayden. Identity was not an issue in the context of this line of questioning. The impeachment testimony of officer White was directed towards Hayden's claim that she had never been in a stolen van with the appellant, not toward the assertion that appellant was not the person in the van with Hayden on July 28, 1978. The cases dealing with the admissibility of extraneous offenses to prove the issue of identity, generally include a defense alibi that the defendant was somewhere else at the time of the offense in question. *See Ford v. State,* 484 S.W.2d 727 (Tex.Cr.App.1972) (defendant claimed he had been working at another place on the day of the murder);

2. In his brief, appellant relies on *Amador-Gonzalez v. United States,* 391 F.2d 308 (5th Cir. 1968) to support his claim of a pretext arrest. Appellant's reliance is unfounded. In *Amador-Gonzalez,* the arresting officer was a narcotics officer who generally does not make traffic arrests. The officer watched the defendant continually make the same improper turns over a period of about an hour before he stopped the defendant, and the court held that it was clear from the officer's testimony that the traffic arrest was made in order to search the defendant's car. These facts are vastly different from the present case.

*Ransom v. State,* 503 S.W.2d 810 (Tex.Cr. App.1974) (defense witnesses testified that defendant was not in Dallas at time of the offense); *Collins v. State,* 548 S.W.2d 368 (Tex.Cr.App.1977) (defendant denied earlier confession and claimed he had been at a store paying a bill at time of the offense); *Berry v. State,* 588 S.W.2d 932 (Tex.Cr.App. 1979) (defense witness testified that defendant had not been with him at the robbery); *Collins v. State,* 577 S.W.2d 236 (Tex.Cr. App.1979) (defendant did not testify; defense witnesses testified that defendant was at home and had a different hair style than the one described by complainant at the time of the offense); *Chambers v. State,* 601 S.W.2d 360 (Tex.Cr.App.1980) (defendant did not testify; defense witnesses testified the defendant was at home at the time of the offense). Since impeachment of Hayden was the sole purpose for officer White's testimony, we must determine whether the extraneous offenses of the appellant, testified to by officer White, were admissible.

The court in *Albrecht v. State,* 486 S.W.2d 97, 99 (Tex.Cr.App.1972), held that the test for determining the admissibility of any type of evidence is whether the probative value of such evidence outweighs its inflammatory aspects, if any. Even so, the Court of Criminal Appeals has consistently held that "an accused is entitled to be tried on the accusation made in the State's pleading and that he should not be tried for some collateral crime or for being a criminal generally." *Id.* at 100. The admissibility of Officer White's testimony with regard to the appellant's alleged extraneous offenses depends upon whether that testimony fits into one of the six categories outlined by the court in *Albrecht.*

The *Albrecht* court held that:

Evidence of extraneous offenses committed by the accused has been held admissible:

(1) To show the context in which the criminal act occurred—what has been termed the "res gestae"—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence.

(2) To circumstantially prove identity where the State lacks direct evidence on the issue.

(3) To prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself.

(4) To prove malice or state of mind, when malice is an essential element of the State's case and cannot be inferred from the criminal act.

(5) To show the accused's motive, particularly where the commission of the offense at bar is either conditioned upon the commission of the extraneous offense or is part of a continuing plan or scheme of which the crime on trial is also a part.

(6) To refute a defensive theory raised by the accused.

*Id.* at 101.

Finally, the court concluded that "the circumstances which justify the admission of evidence of extraneous offenses are as varied as the factual contexts of the cases in which the question of the admissibility of such evidence arises. Each case must be determined on its own merits." *Id.* at 100.

■ Officer White testified that he had encountered Ruiz and Hayden in a van on the night of December 21, 1978. If his testimony had ended there, the State would have successfully impeached defense witness Hayden's statement that she had been in a van with the appellant only once. Allowing White to testify to the extraneous offenses involved in a high-speed chase, complete with shots fired at the pursuing officer, was in excess of what was needed for the State to impeach Hayden and was obviously inflammatory. We therefore hold that the trial court committed reversible error in allowing officer White to testify to the alleged extraneous offenses of the appellant. Appellant's first ground of error is

sustained. The judgment of the trial court is reversed, and the cause is remanded for a new trial.

BUTTS, Justice, dissenting.

Admission into evidence of an extraneous offense committed by the one defense witness and the appellant, did not, in my opinion, constitute reversible error. While the majority opinion discusses only the argument addressed to impeachment of the witness' credibility, it ignores the matter of appellant's identity. Appellant raised both points in this one ground of error. *See* Tex.Code Crim.Pro.Ann. art. 40.09 § 9 (Vernon 1979).[1]

The defense of appellant raised the issue of the identity of the perpetrator of the offense. During the case in chief testimony of the only defense witness, Hayden, put identity of appellant squarely in issue. She admitted on cross-examination that she had recently entered pleas of guilty in three felonies, one of which involved the unauthorized use of a van. Relative to one of the offenses she made a judicial admission in which she named appellant as a co-perpetrator of that offense of unauthorized use of a motor vehicle, the same offense as in this case. That offense occurred on July 3, 1978; the present offense occurred on July 26, 1978. This extraneous offense clearly met the test of *Ransom v. State,* 503 S.W.2d 810, 811 (Tex.Cr.App.1974), wherein the court cites *Ford v. State,* 484 S.W.2d 727, 729 (Tex.Cr.App.1972):

> ... evidence of an extraneous offense is admissible to prove identity, when identity is an issue, only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial.
>
> ... That is, if it is established that the accused committed an extraneous offense, and that there is some distinguishing *characteristic* common both to it and the offense for which the accused is on trial, then an inference may be drawn

that the accused was the person who committed the primary offense.... (emphasis supplied by the Court of Criminal Appeals)

The arresting officer, Nelson, identified appellant as being in the stolen van when he first stopped it, but, he testified, appellant jumped from the van and fled when the officer told him he was under arrest. Hayden testified the person who fled was not the appellant; rather, she said, it was another man. Thus, the identity issue became a fact question for the jury, and extraneous offenses meeting the test of *Ransom, supra,* became admissible. In *Murphy v. State,* 587 S.W.2d 718, 721 (Tex.Cr.App.1979), the extraneous transaction "was not shown to be relevant to the disputed issues raised by the alibi testimony and was therefore not admissible for the purpose of touching upon the motive, weight, credibility and such of the two witnesses, Miss Davis and [the defendant] Murphy." The *Murphy* court held that an issue regarding the general credibility of a witness in a criminal trial is not a material issue in the sense that it will justify the admission of inherently prejudicial evidence of details of an extraneous offense committed by the witness. 587 S.W.2d at 722. Unlike the present case, the defendant testified in that case.

Hayden had already been impeached by her admission of final convictions in three felonies, one of those pleas of guilty giving rise to her judicial admission of appellant's participation as a party to that offense. The "only once" time that Hayden claimed she had been in a van with appellant was a seemingly innocuous ride in a van borrowed from an acquaintance, and not a ride in a stolen one. Her judicial admission, however, concerned a stolen van and contradicted her story. The rebuttal testimony of officer White about another stolen van hardly added to Hayden's impeachment, which had already been accomplished. Defense counsel had reiterated her admission of crimes in the case-in-chief, one of which

---

1. "The trial court committed reversible error in admitting into evidence the testimony of officer Bill White which evidenced the commission of extraneous offenses by appellant. *Said evidence is inadmissible to show identity* and is inadmissible for purposes of impeachment." (Emphasis supplied.)

also specified appellant's identity in a similar offense.

The question boils down to whether White's rebuttal testimony concerning the stolen van on December 21, 1978, was for the purpose of general impeachment that was unjustifiably prejudicial to the appellant. If so, its admission constituted reversible error. I would say, in view of all of the evidence, including the impeachment evidence of Hayden and the judicial admission, both occurring in the case-in-chief, that it did not constitute reversible error.

Therefore, I respectfully dissent.