Willie Charles **BERRY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 56051.

Court of Criminal Appeals of Texas, Panel No. 3.

Oct. 31, 1979.

James L. McNees, Jr., Dallas, for appellant.

Henry M. Wade, Dist. Atty., John H. Hagler, and Paul D. Macaluso, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for aggravated robbery. Punishment was assessed by the trial court at fifty years in the Texas Department of Corrections. The sufficiency of the evidence to sustain the conviction is not challenged.

In his first ground of error, appellant contends that the trial court erred in admitting evidence of an extraneous offense, offered as rebuttal testimony by the State. The robbery for which appellant was convicted occurred on November 29, 1974. Roy Daniel testified that on this date, he was the dealer in a Fina service station. That afternoon, a young black male, who he later learned was Tommie Berry, came into the station, stating that it was cold outside and asking if he could warm up inside. Daniel let him remain inside the station. Tommie sat by the stove for a while, and then made two telephone calls. He stated to Daniel that there was no answer. Tommie then asked how much cigarettes cost there, and then bought a pack of Kool cigarettes from Daniel, paying with a one dollar bill. Daniel had to open the cash drawer to get change. Tommie then made another telephone call from inside the store, and then sat down again and opened the cigarettes and lit one.

A minute or so later, a dark blue Cadillac drove into the station very fast and pulled up very close to the building. A black male, identified by Daniel as appellant, was driving the car. Daniel approached the car, and the driver asked him a question about the younger male inside the station. When Daniel turned to look, Tommie was holding a gun on him. Tommie then took Daniel into the storeroom, where he threatened to kill him. Meanwhile, appellant and Tommie took cash, cigarettes and a pistol from the station.

After other evidence was presented to connect appellant to the offense, appellant presented a defense of alibi. Tommie Berry, appellant's nephew, who had previously pled guilty to the robbery, testified that appellant had not been with him in the commission of that offense. Several other witnesses, including appellant and his mother and sisters, testified to appellant's alibi defense.

Upon rebuttal, the State offered the testimony of Timothy Chambers, who testified

that on November 26, 1974, he was working at a Shamrock service station. That afternoon, a tall, slender black male, later identified as Tommie Berry, came into the service station and asked if Chambers was hiring. When Chambers responded that he was not, Tommie asked to use the telephone. Chambers told him that it was only for business purposes. Tommie stood in the station for about 10 minutes, and then he asked how much cigarettes cost. He then asked for a package of Kool cigarettes, and paid for them with a one dollar bill. Chambers had to get change for him.

Then a dark blue Cadillac pulled into the station and requested a dollar's worth of gasoline. The driver of the car was identified as appellant. Chambers saw that the driver and Tommie were exchanging glances, so he became suspicious. The Cadillac left the station and Chambers asked Tommie to leave also. At this point, a delivery truck pulled in to make a delivery. As Chambers started to make a payment, he looked up and observed Tommie holding a pistol on him. At this point, he also saw that the driver of the Cadillac had pulled back into the station and had gotten out of the car.

The two proceeded to take cash and packages of cigarettes. Just before they left, Chambers heard Tommie yell, "Hey, Willie, you need transmission fluid or oil for your car?"

In *Hines v. State*, 571 S.W.2d 322 (Tex.Cr.App.1978), we reiterated that it is well established that an accused may not be tried for some collateral crime or for being a criminal generally. *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App.1975); *Halliburton v. State*, 528 S.W.2d 216 (Tex.Cr.App.1975); *Alvarez v. State*, 511 S.W.2d 493 (Tex.Cr. App.1973). However, there are exceptions to this general prohibition against the introduction of extraneous offenses. An accused's denial of the commission of the crime on trial and his reliance on the defense of alibi automatically causes the identity of the perpetrator of the crime to become a contested issue. *Collins v. State*, 548 S.W.2d 368 (Tex.Cr.App.1976); *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App. 1974); *Henriksen v. State*, 500 S.W.2d 491 (Tex.Cr.App.1973). When identity is an issue, evidence of other offenses committed by the accused is admissible against him, provided that the other offenses have similar distinguishing characteristics to those of the offense for which he is being tried. *Collins v. State*, 577 S.W.2d 236 (Tex.Cr. App.1979); *Collins v. State*, 548 S.W.2d 368 (Tex.Cr.App.1976); *Ransom v. State*, 503 S.W.2d 810 (Tex.Cr.App.1974). Only when such distinguishing characteristics are present is the extraneous offense relevant, because then there may be drawn an inference that the accused was the person who also committed the primary offense. *Collins v. State*, 577 S.W.2d 236 (Tex.Cr.App. 1979); *Ford v. State*, 484 S.W.2d 727 (Tex. Cr.App.1972).

The extraneous robbery was shown to have been committed only three days before the primary offense. Both were committed in service stations. In both cases, Tommie Berry, who had pled guilty to both offenses, entered the service station on some pretext. In both cases, he stayed inside the service station for a period of time. In the primary offense, Tommie used the telephone. In the extraneous offense, he attempted to do so. In both cases, he purchased a package of Kool cigarettes, paying for both with a dollar bill, necessitating that the complainants open the cash drawer. In both cases, while Tommie was inside, the dark blue Cadillac pulled into the station. The driver was positively identified as appellant by both complainants. In both cases, Tommie held the pistol on the victims, while appellant took the property, which, in both cases, consisted of cash and a large amount of cigarettes. In the extraneous offense, Tommie was heard calling to appellant, using appellant's first name. Clearly, they acted as a team.

We find that sufficient distinguishing characteristics were shown to

make the extraneous offense admissible. The common characteristics may be proximity in time or place, or the common mode of the commission of the act. *Collins v. State,* 577 S.W.2d 236 (Tex.Cr.App.1979); *Ransom v. State,* supra. Both are present in this case. We hold that the trial court did not err in admitting evidence of the extraneous robbery. This ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in overruling his amended motion for a new trial, in which he contended that jury misconduct had occurred. The record reflects that during the course of trial, Tommie Berry's confession to this robbery was admitted into evidence to impeach his testimony at trial that appellant had not been with him during the commission of the robbery. In its charge to the jury, the trial court gave a limiting instruction as to this evidence, as follows:

"You are instructed that a witness may be impeached by showing that he has made other and different statements out of court from those made before you on the trial. Such impeachment evidence may be considered by you to aid you in determining (if it does so) the weight, if any, to be given the testimony of the witness at trial and his credibility; but such impeaching evidence is not to be considered as tending to establish the alleged guilt of the defendant in this case."

Attached to appellant's amended motion for new trial was an affidavit of a juror in the instant case, in which the juror stated:

"My name is Manuel C. Zaky, and I reside at 5706 Llano, in Dallas, Dallas County, Texas; that I was a juror in the trial in the State of Texas versus Willie Charles Berry, case no. C–74–11589–HL, in the Criminal District Court No. 5 of Dallas County, Texas, in October of this year, 1975; that during the jury deliberation, and after we had retired to consider our verdict and prior to reaching a verdict, the jury requested that the confession of Tommie Berry, which was an exhibit in

the case, be brought into the jury room. The contents of the confession was (sic) discussed and considered by the members of the jury in determining and establishing the guilt of Willie Charles Berry, the Defendant; and I personally considered the contents of said confession in determining and establishing the guilt of Defendant, Willie Charles Berry."

█ This appears to be an attempt to impeach the jury's verdict by showing the reason for the conclusion reached and the mental processes whereby the jurors reached their verdict. This jurors may not do. *Ashabranner v. State,* 557 S.W.2d 774 (Tex.Cr.App.1977); *Peak v. State,* 522 S.W.2d 907 (Tex.Cr.App.1975); *Phillips v. State,* 511 S.W.2d 22 (Tex.Cr.App.1974); *Adams v. State,* 481 S.W.2d 884 (Tex.Cr. App.1972). *In Schaefer v. State,* 190 Tex. Cr.R. 609, 5 S.W.2d 982 (1938), a similar contention was rejected. There, the claim was that testimony which was admitted for one purpose was misappropriated when the jury used it for another. We held "[w]e do not believe it permissible for a juror to attempt to impeach his verdict in this manner."

In *Gonzales v. State,* 398 S.W.2d 132 (Tex.Cr.App.1976), the defendant presented evidence that a juror considered certain testimony relating to an extraneous offense, which the trial court had instructed the jury to disregard, in reaching her decision as to the defendant's guilt. We noted that there was no evidence to indicate that this matter had been discussed in the jury room. However, the basis for our overruling the defendant's contention was stated that,

"It has been the consistent holding of this Court that a juror will not be permitted to impeach or explain his or her verdict by showing the reason for the conclusion reached."

More recently, in *Peak v. State,* 522 S.W.2d 907 (Tex.Cr.App.1975), we rejected an attempt by the defendant to show the mental processes of jurors in arriving at their verdict, when testimony was presented that a

juror had considered extraneous offenses, admitted solely for impeachment purposes, in assessing punishment. The trial court there, as here, had given a limiting instruction on the evidence, which a juror attempted to show was not followed. We rejected this ground, reiterating that a defendant is not entitled to develop the mental processes of a juror in reaching a verdict. See also, *Adams v. State,* supra.

Further, we have previously held that it is not permissible to impeach the verdict of the jury by the testimony of jurors showing what use was made of testimony legally before them. *Carpenter v. State,* 124 Tex.Cr.R. 313, 61 S.W.2d 849 (1933); *De Long v. State,* 122 Tex.Cr.R. 290, 55 S.W.2d 107 (1932); *Sims v. State,* 96 Tex.Cr.R. 519, 258 S.W.2d 165 (Tex.Cr.App. 1924). This ground of error presents an attempt to improperly impeach the jury's verdict; accordingly, it is overruled.

The judgment is affirmed.